Hagan v. The State.

a point distant one, two or three miles from the house of Mrs. Franklin was in Franklin county.

Reversed and remanded.

JAMES HAGAN v. THE STATE.

1. CRIMINAL LAW. *Evidence. Hereditory Insanity.* The question of the prisoner's insanity being before the court, it was error to refuse to permit an enquiry into the mental condition of any of his immediate family.

2. SAME. *Statement of expected proof.* Where the materiality of the proof proposed to be made was evident, it is not required to state the purport of the answer of the witness to show its materiality.

Case cited: *Turner* v. *The State*, MS. at Knoxville, 1872.

3. SAME. *Witness.* The court having refused to permit a question to be answered by the first witness examined, it was not necessary, and would have been improper, for the counsel to have asked the question of any other witness.

FROM DAVIDSON.

Appeal from the Criminal Court. THOS. N. FRA-ZIER, J.

ATTORNEY GENERAL HEISKELL for State.

BATE & WILLIAMS for Hagan.

LEA, Sp. J., delivered the opinion of the court.

The plaintiff in error was indicted in the Criminal

Court of Davidson for the murder of R. M. Richards, the seducer of his sister. He was convicted of voluntary manslaughter and sentenced to two years in the penitentiary, from which judgment he has appealed to this court, and assigns several causes of error for reversal.

Upon the trial there was an attempt to show, and there was some evidence tending to show, the insanity of the plaintiff in error at the time of the killing, and Capt. Wm. Stockell, a witness for the plaintiff in error, after stating that he was well acquainted with the family of the prisoner, was asked to state what he knew in regard to the sanity or insanity of a brother of the prisoner. To this question the Attorney general objected, and the court sustained the objection. If medical science has determined any one question more clearly than another, it is that insanity is hereditary. Ray, in his work on the medical jurisprudence of insanity, sec. 155, says, "that the hereditary character of insanity has long since passed into the catagory of established things." Blanford, in his treatise on Insanity, p. 133, says, "the first tendency which demands your attention is hereditary transmission, for it is of all the most potent, and ought always to be kept in view by those aware of its existence, whether medical men, parents or guardians. Here is a cause of insanity which cannot be got rid of—a part and parcel of the individual's constitution and being."

If medical men, in determining the sanity or insanity of a party, enquire minutely into the mental

condition of his immediate family, why is it that a court, seeking after truth of the sanity or insanity or a party, refuses to enquire after the mental condition of his ancestry or immediate family.

While the science of law is hoary with age, yet that its great object and aim, it has never refused to avail itself of all the means and aids which any modern science has demonstrated to be available in the investigation after truth.

The question of the prisoner's insanity being before the court, it was therefore error to refuse to permit the enquiry into the mental condition of any of his immediate family.

But it is insisted for the State that in as much as it was not stated what the witness was expected to prove, this court will not reverse, and we are referred to the case of *Turner* v. *The State,* decided at Knoxville in 1872. The case of Turner was a case of manslaughter; the offer was made to prove what the deceased had said when advised not to go to the shucking (the place where he was killed) that night. This was objected to, and the objection sustained and this court say: " The question propounded by the defendant's counsel was proper, but when objected to the court ought to have been informed as to the general purport of the declaration of Shell proposed to be put in proof, and upon the exclusion of the question, such general purport should have been put in the record to enable this court to juuge of the materiality and competency of such declaration. As it does not appear what declaration Shell made, or whether he

made any, we cannot determine either as to their materiality or competency, and cannot presume that such declarations were made as would be material and competent."

In that case it was necessary to state what was expected to be proved by the answer of the witness for the question wholly failed to reveal whether the evidence was material or competent; but in this case the question was asked if witness knew the condition of John Hagan's mind—whether he was sane or insane. The materiality of this proof was evident, and it was not required to state the purport of the answer of the witness to show its materiality.

But is is further insisted by the State that the widow of John Hagan, who was a witness in the cause, and who more than all others knew the condition of her deceased husband's mind, was not interrogated in reference thereto, but the question was asked of Captain Stockell, a mere acquaintance.

A sufficient answer to this is, the bill of exceptions shows that Captain Stockell was the first witness examined for the defense, and the court having refused to permit the question to be answered by him, it would have been highly improper for the attorney to have asked the question of any other witness.

Let the cause be reversed and remanded for a new trial.